UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:19-cv-00103-FDW

| | |
|---|---|
| DONNA WILLIAMS WILSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>)<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff Donna Wilson's Motion for Summary Judgment (Doc. No. 7), and Defendant Commissioner of Social Security Andrew Saul's Motion for Summary Judgment (Doc. No. 8). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Social Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 8) is GRANTED; and the Commissioner's decision is AFFIRMED.

I. BACKGROUND

On July 15, 2015, Plaintiff Wilson protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 1, 2014. (Tr. 20). Prior to the application at hand, an ALJ ("prior ALJ") had found Plaintiff not disabled under the S.S.A. in a decision dated February 28, 2014. Id. at 207. The claim currently under review was

1

denied initially on November 18, 2015, and upon reconsideration on January 12, 2016. Id. at 20. Thereafter, the claimant filed a written request for hearing before an Administrative Law Judge ("ALJ") on February 23, 2016. Id. On December 21, 2017, the ALJ conducted a hearing regarding Plaintiff's application in Asheville, NC. Id. After the hearing, the ALJ denied Plaintiff's application in a written decision dated March 29, 2016. Id. Plaintiff requested review of the ALJ's decision before the Appeals Council which was ultimately denied. Id. at 6.

In reaching her decision, the ALJ used the five-step sequential evaluation process for the evaluations of claims for disability under the Social Security Act (the "Act"). See (Tr. 22-32); 20 CFR § 416.920(a). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of March 1, 2014, through her date last insured of December 31, 2014. (Tr. 22). At step two of the analysis, the ALJ found Plaintiff to have the following severe impairments: lumbar and thoracic myofascial pain, migraine headaches, irritable bowel syndrome, bipolar disorder, depression and anxiety. Id. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter, "the Listings"); 20 C.F.R. §§ 416.920(d), 416.925, 416.926; id.

Before turning to step four, the ALJ determined the Plaintiff had the Residual Functional Capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional limitations:

> She can occasionally climb ladders, ropes or scaffolds. She can frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to hazards. She is limited to simple, routine tasks performed two hours at a time and occasional interaction with the public.

(Tr. 24). At step four, the ALJ found that through the last date insured, Plaintiff was capable of performing past relevant work as a hand packager, and that this work did not require the performance of work-related activities precluded by the claimant's RFC. Id. at 27. Finally, at step five, the ALJ found based on Plaintiff's age, education, work experience, RFC, and the vocational expert ("VE") testimony, that Plaintiff could perform occupations such as: dishwasher, cook's helper, and janitor. Id. at 32. Furthermore, the ALJ specified these jobs exist in significant number in the nation's economy. Id. As a result, the ALJ concluded Plaintiff was not disabled as defined in the Act, at any time from March 1, 2014, the alleged onset date, through December 31, 2014, the date the Plaintiff was last insured. Id. Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). (Doc. No. 7, p. 2).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity

4

("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner

5

typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id. Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

III. ANALYSIS

Plaintiff asserts three assignments of error in the ALJ's disability decision. (Doc. No. 7, p. 4). Plaintiff argues that (1) the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Plaintiff's RFC; (2) the ALJ failed to properly evaluate Plaintiff's testimony; and (3) the ALJ relied on a flawed hypothetical question to the VE and failed to reconcile conflicts between the testimony of the VE and the Dictionary of Occupational Titles ("DOT"). Id. The Court addresses each assignment of error in turn.

**A. The Medical Opinion Evidence and Plaintiff's Residual Functional Capacity**

**1. Dr. Bierrenbach**

Plaintiff contends the ALJ failed to properly weigh the medical opinion evidence when determining her RFC. (Doc. No. 7, p. 4). Plaintiff notes she has received treatment from psychiatrist Ricardo Bierrenbach, M.D., since April 5, 2013. Id. Plaintiff contends Dr. Bierrenbach's opinions regarding her mental limitations should have been given controlling weight because the ALJ failed to identify substantial evidence contradicting said opinions. (Doc. No. 7, p. 9). Furthermore, Plaintiff contends that if Dr. Bierrenbach's opinions were not given controlling weight, they should have been given greater deference than the "little weight" given by the ALJ, based on the factors outlined in 20 C.F.R § 404.1527. See id. at 10. Plaintiff alleges the ALJ failed to explain how the factors listed in 20 C.F.R. § 404.1527 supported the ALJ's decision to reject the opinions of Dr. Bierrenbach. (Doc. No. 7, p. 11). Plaintiff claims the ALJ incorrectly relied on

6

the findings of the Acquiescence Ruling ("AR") by the prior ALJ when determining Plaintiff's RFC. (Doc. No. 7, p. 11). Plaintiff asserts the ALJ's application of <u>Albright v. Commissioner of the Social Security Administration</u> and <u>Lively v. Secretary of Health and Human Services</u> was flawed because the AR was given binding control over the ALJ's decision. See <u>id.</u>; <u>Albright v. Comm'r of the Soc. Sec. Admin.</u>, 174 F.3d 473 (4th Cir. 1999); <u>Lively v. Sec'y of Health and Human Servs.</u>, 820 F.2d 1391 (4th Cir. 1987). Defendant submits that the examination records of treating psychiatrist Dr. Bierrenbach substantially support the ALJ's mental RFC decision. (Doc. No. 9, p. 8).

The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The opinions from a claimant's treating physicians regarding the nature and severity of an impairment will be given controlling weight if two conditions are met: (1) the opinions are supported by medically acceptable clinical and laboratory diagnostic techniques and (2) the opinions are not inconsistent with other substantial evidence in the record. <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996). By negative implication, if a physician's opinion is not supported by clinical evidence, or it is inconsistent with other substantial evidence, it should be accorded significantly less weight. <u>Id.</u> The Commissioner, when determining the weight of a non-controlling physician opinion should consider factors including: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship,

7

including the treatment provided and the kind of examinations or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency of the opinion with the record as a whole; (5) whether or not the physician is a specialist in the area of medicine upon which the opinion is rendered; and (6) any other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527.

According to Albright and Lively, the ALJ must determine the weight of the AR considering: (1) whether the facts on which the prior finding was based on are subject to change with the passage of time, such as facts relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and, (3) the extent that evidence not considered in the final decision regarding the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim. See Albright, 174 F.3d 473, 476-77; Lively, 820 F.2d 1391, 1392.

When determining the weight to be given to Dr. Bierrenbach's opinion, the ALJ noted that the opinion would not be given controlling weight because it was inconsistent with substantial evidence in the record, specifically the longitudinal mental health records. See (Tr. 30). Dr. Bierrenbach opined that Plaintiff was markedly limited in understanding, remembering and carrying out detailed instructions, but only mildly limited in understanding or remembering simple instructions. See id. Furthermore, Dr. Bierrenbach opined that Plaintiff was markedly limited in her abilities to concentrate, to be consistently punctual, to socialize in a normal manner with peers and coworkers, and to complete a workday without undue physiologically based symptoms and interruptions. See id.

8

The ALJ found these opinions inconsistent with a record which indicated Plaintiff had good social skills, was thorough and worked well with peers, regularly attended meetings, was actively engaged throughout the day with stamina and participation and seemed to be stable with no noticeable depression. See id. A reasonable mind would accept these records as adequate to support the ALJ's decision to not give Dr. Bierrenbach's opinions controlling weight, as the opinions were inconsistent with substantial evidence in the record.

The ALJ did not reject the opinions of Dr. Bierrenbach, but rather, afforded the findings limited weight. See id. at 31. While the decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reasons upon which it is based," 42 U.S.C. § 405(b)(1), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 855 (4th Cir. 2014). The ALJ noted Dr. Bierrenbach's opinion's inconsistencies with the medical record, the fourth factor, consistency, of 20 C.F.R. § 404.1527, in the decision to afford Dr. Bierrenbach's opinion limited weight. See (Tr. 31).

The ALJ did not consider the AR binding when determining Plaintiff's claim, but rather used the appropriate factors when deciding to give great weight to the AR. See (Tr. 26); Albright, 174 F.3d 473; Lively, 820 F.2d 1391. In accordance with factors (1) and (2), the ALJ noted that the AR was rendered merely a day before the Plaintiff's alleged onset date. See (Tr. 26). The ALJ elaborates that the medical records used to decide the AR were reviewed again in the ALJ's decision. Id. at 27. In accordance of factor (3), the ALJ noted that the evidence submitted after the

AR was issued does not indicate a progression in symptoms that would warrant additional functional limitations. Id.

Thus, the ALJ followed the correct legal standards and substantial evidence supports that a reasonable mind could come to the conclusion to give great weight to the prior ALJ's conclusion.

### 2. Dr. Reis

Plaintiff contends the ALJ also failed to properly weigh Internist James Reis, M.D.'s, medical opinion evidence concerning Plaintiff's RFC. See (Doc. No. 7, p. 13). Dr. Reid opined that Plaintiff had significant physical limitations and that Plaintiff's pain, fatigue, and other symptoms interfered with her attention and concentration. See id. Dr. Reis also noted that Plaintiff Wilson had disabling pain from fibromyalgia and migraine headaches. See id. at 15. Plaintiff contends the ALJ's decision to give "little weight" to the opinion of Dr. Reis was flawed because Dr. Reis' opinions were uncontradicted by substantial evidence in the record. See id. at 18. Furthermore, Plaintiff contends that if Dr. Reis' opinions were not controlling, they should have been given more weight based on the factors in 20 C.F.R. § 404.1527(c)(2)-(6) and § 416.927(c)(2)-(6). See id. Plaintiff argues the ALJ failed to demonstrate consideration of the 2010 American College of Rheumatology examination criteria for fibromyalgia, with respect to tender points. See (Doc. No. 10, p. 4). Plaintiff contends the ALJ should have considered evidence of a (1) a history of widespread pain; (2) six or more fibromyalgia symptoms; and (3) evidence that other disorders causing such symptoms were excluded. See id. Defendant submits the ALJ correctly discounted the opinions of Dr. Reis, as such opinions, including the diagnosis of fibromyalgia, were not supported by longitudinal medical records, by SSR 12-2p, and by his own examination records. (Doc. No. 9, p. 12).

10

The opinions from a claimant's treating physicians regarding the nature and severity of an impairment will be given controlling weight if two conditions are met: (1) the opinions are supported by medically acceptable clinical and laboratory diagnostic techniques and (2) the opinions are not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590. Again, the Commissioner, when determining the weight of a non-controlling physician opinion, should consider factors including: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examinations or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency of the opinion with the record as a whole; (5) whether or not the physician is a specialist in the area of medicine upon which the opinion is rendered; and (6) any other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527.

Pursuant to SSR 12-2p, the Commissioner will only find that a person has a medically determined impairment of fibromyalgia if (1) there is a history of widespread pain in all quadrants of the body, persisting for at least 3 months (although the pain may fluctuate in intensity and may not always be present); (2) at least 11 of 18 possible positive tender points are found on physical examination; and (3) that there is evidence that other disorders were excluded as possible causes of the pain. See SSR 12-2P, 2012 WL 3104869, at *2-3 (July 25, 2012).

The ALJ notes a plethora of contradicting medical records regarding Dr. Reis' diagnosis of Plaintiff. See (Tr. 24). Specifically, the ALJ notes records of the Plaintiff's full range of joint mobility, Plaintiff's own account of extended voluntary walking multiple times a week, and the successful treatment medication for Plaintiff's hypertension and migraines. Id. at 28. The ALJ also

11

Case 1:19-cv-00103-FDW   Document 12   Filed 09/08/20   Page 11 of 19

notes Plaintiff's own denial of symptoms such as: headaches, shortness of breath, lower extremity edema, paresthesia, fatigue, or weakness. Id.

The ALJ noted the medical record does not confirm that the claimant has the requisite number of tender point findings, and that Dr. Reis only refers to "severe tender points" of the "shoulder and neck." (Tr. 25). The ALJ noted that Dr. Reis' lack of specificity fails to satisfy the criteria necessary to find fibromyalgia a severe impairment, and that there is no evidence that the medical doctors have excluded other impairments as required by SSR 12-2p. See id.

The ALJ's decisions are based on substantial evidence of contradicting medical records, and thus the ALJ applied the correct legal standard when determining to give "little weight" to Dr. Reis' opinions.

**B. Plaintiff's Testimony**

Plaintiff contends the ALJ's conclusory finding Plaintiff's statements regarding her impairments are "not entirely consistent" with the record is insufficient because the ALJ is required to evaluate a claimant's subjective statements under a number of factors in 20 C.F.R. § 404.1529 (2017) and SSR 16-3P. See (Doc. No. 7, p. 21). Plaintiff contends that the ALJ failed to reconcile Plaintiff's detailed testimony on her symptoms and resulting limitations with the factors outlined in SSR 16-3p and therefore the ALJ's decision frustrates meaningful review. See (Doc. No. 7, p. 21). Defendant submits the ALJ properly evaluated Plaintiff's subjective pain complaints. (Doc. No. 9, p. 14).

When evaluating the decision of the ALJ, the Court must consider (1) whether substantial evidence supports the ALJ's decision and (2) whether the ALJ applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hays, 907 F.2d at 1456 . SSR 16-3p directs the

ALJ to consider a number of factors before making a conclusion regarding the validity of a claimant's testimony on his or her symptoms and resulting limitations, including: (1) the individual's daily activities; (2) the location, duration frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other relevant factors concerning the individual's functional limitations and restrictions. SSR 16-3P, 2017 WL 5180304, at *7-8 (Oct. 25, 2017).

Again, in deciding what weight to give a prior ALJ's decision the ALJ must consider; (1) whether the facts on which the prior finding was based on are subject to change with the passage of time, such as facts relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and, (3) the extent that evidence not considered in the final decision regarding the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim. See Albright, 174 F.3d 473 (4th Cir. 1999); Lively, 820 F.2 1391 (4th Cir. 1987). "When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight . . . ." AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000).

13

In determining that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence, the ALJ cited her reasoning via multiple examples. See (Tr. 15). The ALJ demonstrated contradicting medical records including records indicating the Plaintiff's Bell's Palsy was noted to be stable with mild symptoms, and her hypertension was noted to be stable on medications. See id. at 25. The ALJ emphasized Plaintiff's treatment records during the relevant period of time noted that Plaintiff had denied symptoms of chest pains, shortness of breath, coughing, wheezing, abdominal pain, nausea or vomiting. Id. The ALJ also referenced treatment notes indicated routinely unremarkable findings of respiratory and gastrointestinal examinations and no evidence of hernia or chronic obstructive pulmonary disease. Id. In contrast to Plaintiff's testimony, the ALJ noted medical records indicated no evidence of the symptoms associated with fibromyalgia. Id. The ALJ continued to note conflicting medical records, but also attributed great weight to the prior ALJ's decision in accordance with the previously cited Albright decision. See (Tr. 26). In discussing inconsistencies in the evidence, the prior ALJ wrote:

> At her hearing, Ms. Wilson testified she is tired all the time. She lacks energy. However, she denied any fatigue when she saw Dr. Reis. At her hearing, the claimant said she could stand only 20 minutes and walk for maybe 2 blocks. This is contradicted by her assertions to Dr. Reis that she walks for exercise 3 times a week. The medical non-compliance in the record undercuts the claimant's credibility. In October 2011, Ms. Wilson told Dr. Csapo that she did not attend the counseling sessions as he had requested (Exhibit 9F). During that same visit, Dr. Csapo discovered the claimant did not request refills of Zyprexa over a several month span, even though she had authorization for refills. If the claimant's depression and anxiety were as bad as she alleges, one would think she would refill the medications that were combatting it. . . . On November 12, 2012, a urine drug screen was positive for amphetamines, when no stimulant medication had been prescribed for Ms. Wilson. Office notes from Blue Ridge Community Health on December 10, 2010 indicated the claimant had just worked somewhere for a few weeks but had been terminated because of stealing. . . . The fact that Ms. Wilson could remember 4 of 5 items after a delay and perform serial 7's correctly flies in

14

> the face of her allegation of severely diminished concentration, attention and memory. The claimant's sister maintained Ms. Wilson was able to pay bills, use a checkbook and money orders, and handle a savings account. These activities require a level of attention and concentration belying the claimant's allegations.

(Tr. 226-31).

Plaintiff aptly notes the prior ALJ's discussion criticizes the credibility of the Plaintiff, which is no longer the correct application for evaluating the intensity, persistence, and limiting effects of an individual's symptoms against the individual's testimony. See (Doc. No 10, p. 5). However, the ALJ correctly relies on the prior ALJ's findings and applies those to the current factors of SSR 16-3p including: (1) the individuals daily activities, (4) the type, dosage, effectiveness and side effects of any medication or treatment the individual has taken to alleviate pain or other symptoms, and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. See (Tr. 22-32); SSR 16-3P, 2017 WL 5180304, at *7-8. Plaintiff's claim that the ALJ's decision is frustrated because it does not clearly articulate the evidence by which the ALJ has ruled against contributing great weight to Plaintiff's testimony is contradicted by both the ALJ and the prior ALJ's explicit explanation of the determining factors. See (Tr. 22); SSR 16-3P, 2017 WL 5180304, at *8. Furthermore, the ALJ articulated the necessary factors based on the SSR 16-3p's policy explanation "if there is no information regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case." See SSR 16-3P, 2017 WL 5180304, at *8.

A reasonable mind could accept these medical records as substantial evidence contradicting Plaintiff's testimony and therefore the Court must uphold the ALJ's decision to find the Plaintiff's testimony "not entirely consistent" with the record.

### C. ALJ's Hypothetical to the VE and Conflicts with the VE's Testimony

### 1. ALJ's Hypothetical

Plaintiff contends the ALJ relied on a hypothetical question to the VE that failed to accurately describe the mental limitations recognized for Plaintiff Wilson. See (Doc. No. 7, p. 22). Specifically, Plaintiff claims the ALJ's hypothetical to the VE did not include the Plaintiff's moderate limitations in her ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage herself. Id. Plaintiff contends the ALJ's limitation to simple routine tasks accounted for Plaintiff's limitation in understanding but that the ALJ did not describe Plaintiff's limitation in her ability to concentrate over a period of time, persist at tasks, nor maintain a regular pace over the course of a workday. See id.

Plaintiff contends the ALJ's failure to adapt the hypothetical to Plaintiff's moderate limitations is a violation of the Fourth Circuit's decision in Mascio v. Colvin, where the court "agree[d] with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (4th Cir. 2015) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). See also SSR 96-8P, 1996 WL 374184, at *4 (noting, where ALJ completes Psychiatric Review Technique Form ("PRTF"), mental RFC evaluation for use at steps 4 and 5 "requires a more detailed assessment by itemizing various functions … summarized on the PRTF").

The Fourth Circuit recently held that a limitation to simple routine repetitive tasks ("SRRT") sufficiently accounted for a moderate limitation in CPP and borderline intellectual disability where the ALJ "issued a comprehensive decision denying [Plaintiff's] claim." Shinaberry v Saul, 952 F.3d 113, 119

16

(4th Cir. 2020). The plaintiff there argued that a limitation only to SRRT violated Mascio, but the Fourth Circuit "disagree[d]," reiterating that Mascio did not enact a *per se* rule, but instead allowed the ALJ to explain why a restriction greater than SRRT was not warranted. Id. at 121. The court went on to discuss the ALJ's discussion of Plaintiff's mental limitations, which consisted primarily of explaining the rationale for giving great weight to the State Agency psychological experts' and consultative psychologist's opinions. Id. The ALJ stated that the SRRT restriction "accounted" for Plaintiff's limitations. Id. at 121-22. "In sum … the ALJ … addressed [Plaintiff's mental limitations] and explained why the psychological evidence and [Plaintiff's] statements support [only] a mental limitation to [SRRT]." Id. at 122. Accordingly, the Fourth Circuit affirmed the ALJ's hearing decision. Id. at 122

Similar to the ALJ in Shinaberry v. Saul, the ALJ in the case at hand discussed in detail the psychological evaluations performed on Plaintiff by Dr. Bierrenbach as well as her Function Reports, and sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Plaintiff's moderate limitations. See (Tr. 27); Shinaberry, 952 F.3d at 122. The ALJ evaluated Plaintiff's moderate limitation interacting with others, noting her grocery shops and visits with parents as well as medical records indicating she displayed strong interactive skills with peers and staff members. See (Tr. 23). With regard to her moderate limitation in concentrating, persisting, or maintaining pace, the ALJ noted Plaintiff's strong Functional Reports indicated good memory skills, task completion and concentration, as well as treatment notes of normal attention spans. Id. Additionally, the ALJ perceived the Plaintiff's normal attention span and concentration in deciding to give limited weight to the moderate limitation opinions of Kristen Martin and Dr. Bierrenbach. Id. at 29. When evaluating the Plaintiff's moderate limitation to adapting or managing herself, the ALJ noted mental records that indicated Plaintiff adapted well to her surroundings and appeared to make friends quickly. Id. at 30. The

17

ALJ noted Plaintiff's medical records demonstrated Plaintiff was doing well, making friends, building supports, and completed tasks with minimal support. Id.

The ALJ's findings directly support the ALJ's hypothetical to the VE, which limited the claimant to simple routine repetitive tasks. See id. at 66. As outlined by Shinaberry, the ALJ properly discussed the decision to limit Plaintiff to simple, routine tasks performed two hours at a time with occasional contact and explained the rationale for giving limiting weight to the diagnosing physicians for Plaintiff Wilson. Id. at 29; Shinaberry, 952 F.3d at 122. Accordingly, the ALJ applied the correct legal standard and there is substantial evidence to support the ALJ's conclusion.

### 2. Conflicts with the VE's Testimony and the DOT

Plaintiff contends the ALJ erred by failing to reconcile apparent conflicts between the testimony of the VE and the description of jobs found for Plaintiff in the Dictionary of Occupational Titles ("DOT"). (Doc. No. 7, p. 23). Plaintiff contends the Fourth Circuit has placed an affirmative duty on the ALJ to independently identify and resolve any apparent conflicts between the VE's testimony and the DOT. Id. at 24 (citing Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015)). Plaintiff claims all the jobs identified by the VE require a reasoning level of 2 or higher, which entail carrying out detailed written and oral instructions, directly conflicting with the ALJ limiting Ms. Wilson to simple, routine tasks. Id. Plaintiff contends the ALJ did not resolve this apparent conflict and thus has failed to meet the burden of identifying jobs that Plaintiff Wilson can perform given her restrictions. Id. Defendant submits the VE identified jobs raised no apparent conflict with the DOT's reasoning level of 2. (Doc. No. 9, p. 19.)

SSR 00-4p states occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4,

18

2000). When there is an apparent unresolved conflict between VE evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination about whether the claimant is disabled. Id.

After the parties completed briefing in the matter at hand, the Fourth Circuit ruled on this very issue in Lawrence v. Saul, 941 F.3d 140 (4th Cir. 2019). The Fourth Circuit held there is no apparent conflict within the meaning of SSR 00-4p between a residual functional capacity for "simple, routine, repetitive tasks of unskilled work" and the definition of reasoning level two in the DOT. Lawrence, 941 F.3d 140, 143. The Fourth Circuit reasoned while "short" functions are inconsistent with "detailed" ones, there is "no comparable inconsistency" between "simple, routine, repetitive" work functions and the definition of reasoning level two. Id. As such, no conflict exists between the VE's testimony and the DOT, and therefore the ALJ had no duty to reconcile such conflict.

## IV. CONCLUSION

Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 8) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: September 8, 2020

Frank D. Whitney
United States District Judge